**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EMMANUEL SAARAH ADJEI et al., | : | CIVIL CASE NO. |
|     Plaintiffs, | : | 3:24-CV-1331 (JCH) |
| | : | |
| v. | : | |
| | : | |
| U.S. DEPARTMENT OF STATE et al., | : | SEPTEMBER 24, 2025 |
|     Defendants, | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS (DOC. NO. 20)**

**I.     INTRODUCTION**

Plaintiff Emmanuel Saarah Adjei ("Mr. E. Adjei"), along with his two adult sons Kofi Atta Saarah ("Mr. K. Saarah") and Nathaniel Saarah Apraku[1] ("Mr. N. Apraku") brought this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. and the Mandamus Act, 28 U.S.C. § 136 against the U.S. Department of State ("State Department"), State Department Secretary Anthony Blinken ("Secretary Blinken"), the U.S. Embassy in Accra, Ghana ("Embassy"), and the U.S. Ambassador to Ghana Virginia Palmer ("Ambassador Palmer") (together, "defendants.")  See Complaint ("Compl.") (Doc. No. 1).[2]  Mr. E. Adjei and Mr. K. Saarah (together, "plaintiffs") allege that defendants have unreasonably delayed processing and adjudicating Mr. K. Saarah's application for an immigrant visa.  Id.

---

[1] On September 16, 2025, plaintiffs moved to dismiss plaintiff Mr. N. Apraku because Mr. N. Apraku was granted the ultimate relief requested in the Complaint, a final decision as to his petition for an immigrant visa, thereby mooting the claims with respect to his Petition.  See Motion for Dismissal of Party Under Rule 21 (Doc. No. 29).  The court granted the dismissal on September 17, 2025.  See Order Granting Notice of Voluntary Dismissal (Doc. No. 30).

[2] At the same time Mr. E. Adjei filed the petition for his two sons, he also filed a petition for his daughter, Linda.  Linda was granted an immigrant visa and is currently living in the United States as a legal resident.  Linda did not bring suit against defendants.  See Compl. at ¶ 2.

1

Now before the court is defendants' Motion to Dismiss. See Motion to Dismiss (Doc. No. 20) ("Defs' Mot."); Memorandum in Support of Motion to Dismiss (Doc. No. 20-1) ("Defs' Mem."). Plaintiffs oppose the Motion. See Memorandum in Opposition ("Opp.") (Doc. No. 27); see also Reply to Opposition to Motion to Dismiss ("Reply") (Doc. No. 28). For the reasons stated below, the Motion is granted.

## II.   BACKGROUND

### A. Plaintiffs' Alleged Facts

In May 2012, Mr. E. Adjei, a naturalized U.S. citizen residing in East Hartford, Connecticut, filed simultaneous immigrant visa applications for three of his adult, unmarried children living in Ghana: his daughter Linda and his two sons Nathaniel and Kofi. See Compl. at ¶¶ 8, 2. The petitions were approved by U.S. immigration authorities in August 2013, and forwarded to the National Visa Center ("NVC") to prepare for adjudication by the Embassy. Id. at ¶¶ 17-18. As a result of visa backlogs for adult unmarried children of U.S. citizens, the NVC did not begin processing plaintiffs' cases until 2019. Id. at ¶ 19. In or around April 2019, the NVC notified plaintiffs that their petitions were ready for adjudication and requested submission of documents to prepare for transfer to the Embassy. Id. at ¶ 20. Plaintiffs submitted the requested documents and were notified that their cases were "documentarily qualified." Id. at ¶¶ 21-22.

On February 19, 2020, plaintiffs received an email informing them that Mr. K. Saarah had been scheduled for an immigrant visa interview at the Embassy for March 17, 2020. Id. at ¶ 24. Due to embassy restrictions resulting from the COVID-19 global pandemic, Mr. K. Saarah's interview was canceled and rescheduled for July 21, 2020.

2

Id. at ¶ 25. The July 21 interview was again canceled as a result of COVID-19 related restrictions. Id. at ¶ 26. Plaintiffs followed up with the Embassy in July 2021 and again in September 2023 regarding rescheduling Mr. K. Saarah's interview. Id. at ¶¶ 28-29. Plaintiffs have not yet received an interview date for Mr. K. Saarah. Id. at ¶ 30.[3]

### B. Procedural Background

Mr. E. Adjei filed his Complaint on August 14, 2024. See, generally, id. Plaintiffs claim that defendants unduly delayed processing Mr. K. Saarah's request for an immigrant visa, thereby violating plaintiffs' statutory right to adjudication within a reasonable time frame under the APA and necessitating relief under the Mandamus Act. Id. at ¶¶ 45, 52.

On February 12, 2025, defendants filed a Motion to Dismiss plaintiffs' Complaint. See Defs' Mot. Plaintiffs filed their Memorandum in Opposition on June 2, 2025. See Opp. On June 16, 2025, defendants filed their Reply to Opposition to Motion to Dismiss. See Reply.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. Makarova, 201 F.3d at 113. In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw

---

[3] Defendants have issued final decisions as to Mr. E. Adjei's two other children: Linda and Nathaniel. See Compl. ¶¶ at 32, 33, 35, 36, 37, 39; Motion for Dismissal of Party at 1.

all reasonable inferences in favor of the plaintiff.  See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion.  See Makarova, 201 F.3d at 113.

    B. Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action."  Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## IV. DISCUSSION

### A. Statutory and Regulatory Framework

A non-U.S. citizen who has a family relationship with a U.S. citizen may obtain an immigrant visa. See 8 U.S.C. § 1151(b)(2)(A)(i). For a non-U.S. citizen to obtain a visa, the U.S. citizen relative must first file a Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services ("USCIS"). See id. § 1154; 8 C.F.R. § 204.1(a)(1). "Once the petition is approved, the journey for [certain] immediate-relative-visa seekers ends there: Visas in that category are not subject to any numerical caps, so they can receive their visas soon after their petitions are approved." Cuthill v. Blinken, 990 F.3d 272, 274 (2d Cir. 2021). However, the petitions for other categories of relative visa seekers—such as "adult (21 or over) sons and daughters of citizens"—are then sent to the NVC and placed in a "first-come, first-served queue with others in her category in order of 'priority date'— that is, the date on which the visa petition was filed." Id. at 275. "After the NVC determines that all preliminary steps have been accomplished, it marks the case file as 'documentarily complete' and works with the appropriate U.S. Embassy with jurisdiction over the applicant's place of residence to schedule an appointment for the applicant's in-person interview." Ahmed v. Bitter, No. 23-CV-189, 2024 WL 22763, at *1 (E.D.N.Y. Jan. 2, 2024). "After that interview, a United States consular officer must either issue the visa, refuse the visa, or discontinue granting the visa." Id. The visa applicant bears the burden of proof for establishing eligibility throughout this process. See 8 U.S.C. § 1361.

B. <u>Doctrine of Consular Nonreviewability</u>

The doctrine of consular nonreviewability rests upon the foundational principle of the separation of powers. "For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." <u>Trump v. Hawaii</u>, 585 U.S. 667, 702 (2018) (internal citations omitted). Indeed, because decisions related to the admission and exclusion of foreign nationals "may implicate relations with foreign powers or involve classifications defined in the light of changing political and economic circumstances," those judgments are more appropriately lodged in the Legislature or Executive. <u>Id</u>. (internal quotations omitted).

The Second Circuit has held that, under the doctrine of consular nonreviewability, it "is settled that the judiciary will not interfere with the visa-issuing process." <u>See</u> <u>Hsieh v. Kiley</u>, 569 F.2d 1179, 1181 (2d Cir. 1978). Though the Second Circuit has not expressly ruled on whether the doctrine of consular nonreviewability bars claims seeking to compel adjudication of immigrant visa petitions, courts in this District have held the doctrine precludes unreasonable delay claims brought under either the APA or the Mandamus Act. <u>See</u> <u>Khan v. United States Dep't of State</u>, 722 F. Supp. 3d 92, 98 (D. Conn. 2024); <u>Gharedaghi v. Blinken</u>, No. 3:24-CV-1798 (VAB), 2025 WL 2300763, at *6 (D. Conn. Aug. 8, 2025).

Plaintiffs challenge this court's prior decision in <u>Khan</u>, stating that <u>Dep't of State v. Muñoz</u>, 602 U.S. 899 (2024), abrogated <u>Hsieh</u> in holding that the doctrine of consular nonreviewability is not jurisdictional. <u>See</u> Opp. at 4. Even assuming, <u>arguendo</u>, that

6

Muñoz modified the holding in Hsieh by framing the doctrine of consular nonreviewability as non-jurisdictional, Muñoz nevertheless affirmed the underlying separation of powers principle that the judiciary is not suited to issue directives on how the Executive exercises its authority to admit noncitizens. Indeed, Muñoz explicitly states that decisions related to immigration are largely immune from judicial control. 602 U.S. at 907 (2024). The doctrine bars claims seeking a court to compel adjudication of a visa application—whether it does so because it deprives the court of jurisdiction or because it deprives plaintiffs' claim of legal recognition is irrelevant to the ultimate disposition of this case at the motion to dismiss stage. Plaintiffs' claim does not survive regardless.

Even if the doctrine does not pose a jurisdictional bar and preclusion of a claim under the doctrine is strictly a question of the sufficiency of the pleading under Rule 12(b)(6), see Gharedaghi, 2025 WL 2300763, at *4, plaintiffs fail to state a claim. The Supreme Court has recognized only a narrow exception to the bar of consular nonreviewability: where denial of a visa allegedly burdens the constitutional rights of a U.S. citizen. Muñoz, 602 U.S. at 908. The Second Circuit recognizes this exception only with respect to certain constitutional claims: First Amendment claims asserting a right to have a visa applicant present his or her views in this country. See Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 125 (2d Cir. 2009). Plaintiffs assert only an abstract "due process of law" violation. See Compl. at ¶¶ 3, 45, 52. However, the Second Circuit has not extended the exception to Fifth Amendment due process claims. See Nawaz v. United States Dep't of State, 2024 WL 99486, at *5 (E.D.N.Y. Jan. 9, 2024) (dismissing plaintiff's due process claim on the basis of consular nonreviewability

7

because it does not fall within the Second Circuit's recognized exception for First Amendment claims). Thus, a claim based on due process fails to state a claim because of the doctrine of consular nonreviewability.

### C. APA & Mandamus Act Relief

Further, even if the doctrine of consular nonreviewability was inapplicable, plaintiffs fail to state a claim under the APA. Before even reaching the question of whether any alleged delay by defendants was unreasonable, plaintiffs are first required to show under section 706(1) of the APA that defendants "failed to take a discrete agency action that [they are] required to take." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004). This court can compel agency action under section 706(1) of the APA only where there is "a specific, unequivocal command" placed upon defendants to take a "precise definite act," which defendants failed to take. Id. at 63-64. Given the present posture of Mr. K. Saarah's Petition as pending subject to receipt of medical information from plaintiffs, see Opp. Exhibit 3, it is not clear what discrete agency action defendants have failed to take.

Moreover, plaintiffs fail to plead why the alleged delay in Mr. K. Saarah's Petition is unreasonable under the APA,[4] especially as plaintiffs readily concede that his

---

[4] The court is mindful that in assessing the reasonableness of agency delay, courts commonly look to the six factors enshrined in Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 79–80 (D.C. Cir. 1984) (i.e., the "TRAC" factors). Courts consider,

> "(1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

interviews were rescheduled due to COVID-19 related restrictions at the peak of the global pandemic. "It is settled. . . that the mere passage of time cannot sustain a claim of unreasonable delay. Courts have held delays in the vicinity of five years in the adjudication of immigration benefits not to be unreasonable as a matter of law." Gharedaghi, 2025 WL 2300763, at *5 (D. Conn. Aug. 8, 2025) (quoting Sharifi v. Blinken, 731 F. Supp. 3d 433, 439 (E.D.N.Y. 2024) (emphasis added). Indeed, "courts in this [C]ircuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable." Almakalani v. McAleenan, 527 F.Supp.3d 205, 225 (E.D.N.Y. 2021).

Courts in this Circuit have also denied unreasonable delay claims where, as here, plaintiffs do not plead a basis as to why defendants should afford their Petition immediate attention given constrained resources and substantial caseload within the system. See Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005). Plaintiffs' theory of the unreasonable delay turns strictly on the fact that the three siblings' applications were processed on different timelines despite allegedly being "identical cases filed. . . simultaneously." Compl. at ¶ 48. For the same principle the doctrine of

---

Id. In light of the above, it does not appear that any of the factors weigh in plaintiffs' favor. With respect to the first factor, plaintiffs' only pleading that defendants are not following a rule of reason is that defendants have treated allegedly "identical" visa applications differently. See, e.g., Compl. at ¶ 1. However, the court declines to examine whether the visa applications could plausibly be identical for the same reason discussed in supra Part IV.B. on consular nonreviewability: the court does not have insight into the Petitions of three different adult applicants or the various factors used in evaluating each Petition. With respect to the second factor, there is no statutory deadline by which consular officers must adjudicate a visa application, and plaintiffs do not plead as such. The third and fifth factors interrelate and concern what interests are prejudiced by the purported delay and the nature of those interests. These factors are neutral, because while separation of Mr. K. Saarah from his family impacts human welfare, this impact is innate to the agency's work as a whole (i.e., granting or denying applications under 8 U.S.C. § 1151(b)(2)(A)(i)). See Sierra Club v. Thomas, 828 F.2d 783, 798 (D.C. Cir. 1987). The fourth factor is neutral or favors defendants because, assuming a zero sum nature of agency resources, judicial action compelling the defendants to redirect those resources to the attention of plaintiffs will necessarily detract attention from the adjudication of other applicants who may be similarly or worse situated. Finally, with respect to the sixth factor, plaintiffs do not allege bad faith on behalf of the government in their adjudication of Mr. K. Saarah's petition.

9

consular nonreviewability precludes judicial scrutiny of immigration decisions, the court declines to delve into whether the Petitions at issue were indeed "identical." Such an assessment would require visibility into the Petitions themselves and a precise understanding of the economic and political climate as it relates to immigration decisions rendered in Ghana.

Similarly, an unreasonable delay claim under the Mandamus Act requires a plaintiff to show "that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." Benzman v. Whitman, 523 F.3d 119, 132–33 (2d Cir. 2008)). Without even assessing the first two prongs of the test, it is clear from the face of the Complaint that plaintiffs fail at the third prong because they have brought their Mandamus Act claims as a complement to their APA claims. Plaintiffs cannot plead that they lack another adequate remedy at law because the APA provides such remedy, even if their APA pleadings fail on the merits. See Sharifi, 731 F. Supp. 3d at 438.

Plaintiffs ask this court to blindly interfere in the visa issuing process, without regard to the delicate and complex factors that go into a consular officer's decision to admit a foreign national into the United States. Plaintiffs' claim is especially troubling given that defendants are currently awaiting more information from plaintiffs to proceed with processing. By plaintiffs' own admission, Mr. K. Saarah's application remains under review pending completion of his medical exam. See Opp. Exhibit 3.[5] Stated

---

[5] The parties disagree as to the agency action taken on Mr. K. Saarah's application. In their Motion to Dismiss, defendants assert that Mr. K. Saarah's application was formally adjudicated in the form of a refusal. Defs' Mem. at 16-17. Plaintiffs, however, allege in both their Complaint and in their Opposition that Mr. K. Saarah's Petition remains pending. See, e.g., Compl. at ¶ 30; Opp. at 6-7.

more plainly, the current delay is that of the plaintiffs.  Meixian Ye v. Kelly, 2017 WL 2804932, at *1 (E.D.N.Y. June 28, 2017); Bokhari v. Garland, No. 2:23-CV-01474-GRB, 2023 WL 5283898, at *1 (E.D.N.Y. Aug. 17, 2023).  It is unclear exactly what action the court should compel at this juncture[6] given that defendants are presently waiting for more information from plaintiffs before proceeding with Mr. K. Saarah's petition.

    This is not an instance where defendants have potentially abdicated a nondiscretionary, i.e., purely legal, duty as required by either or both the APA and Mandamus Act.  See Ceken v. Chertoff, 536 F. Supp. 2d 211, 216 (D. Conn. 2008) (finding that the APA explicitly forecloses instances where immigration officials choose to not act on a visa petition altogether).  Rather, this is an instance where plaintiffs pray for judicial scrutiny of an active immigration petition review when longstanding precedent at both the Circuit and Supreme Court level precisely forbids such review.

---

Drawing all inferences in the non-movants' favor, the court accepts as true that Mr. K. Saarah's application remains pending and has not been formally refused.

[6] Plaintiffs repeatedly state in their Opposition that they are "asking the Defendants to stop unreasonably jumping other cases to the front of the queue over them."  Opp. at 3.  Indeed, plaintiffs claim that they, "unlike the typical litigant challenging visa processing delay – [plaintiffs] are not seeking to jump 'to the front of the queue,' they are seeking to get back to the front of the queue."  Id. at 3-4.

    It is not clear, short of ordering defendants to decide Mr. K. Saarah's petition before any other, what relief the court can provide to rectify this alleged queue jumping issue, particularly as the court lacks information on how the queue is processed with respect to pending requests for information from plaintiffs.  The court lacks the power to order defendants to decide Mr. K. Saarah's Petition over other applicants.

## V.    CONCLUSION

For the reasons stated above, the defendants' Motion to Dismiss (Doc. No. 20) is granted.  Plaintiffs' Complaint is dismissed with prejudice.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of September 2025.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge